SO ORDERED.

SIGNED this 20th day of August, 2021.



Mitchell L. Herren
United States Bankruptcy Judge

PUBLISHED

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

IN RE:

RANDY L. ROBINSON

　　　　　　　Debtor.

Case No. 20-11471
Chapter 11

## ORDER ON CONFIRMATION OF DEBTOR'S SUBCHAPTER V
## AMENDED PLAN DATED MARCH 1, 2021

This is the second challenge by the United States Trustee (UST) in debtor's Subchapter V case, both centered on debtor's gambling. Previously, the UST moved to dismiss the case for gross mismanagement of the estate based upon debtor's postpetition, preconfirmation gambling in the first month after filing. The Court

1

denied that motion (*Order I*).[1] Now the Court addresses the UST's objection to confirmation of debtor's amended plan, contending it was not proposed in good faith under § 1129(a)(3) and asserting that debtor "concealed prolific gambling" pre- and post-petition.[2] The Court held an evidentiary hearing on both the gross mismanagement claim and the good faith objection. At that hearing the UST also contended that the debtor's amended plan could not be confirmed as a consensual plan under § 1191(a) because no creditor in any class returned a ballot on the amended plan.[3]

For the reasons set forth below, the Court overrules the UST's objection to confirmation based on an alleged lack of good faith and finds that the amended plan can be confirmed as a consensual plan under § 1191(a).

<u>Jurisdiction</u>

Confirmation of debtor's amended plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The Court has jurisdiction to determine whether the amended plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.[4]

<u>Findings of Fact</u>

---

[1] Doc. 71. *See In re Robinson,* 628 B.R. 168 (Bankr. D. Kan. Apr. 22, 2021).
[2] Doc. 57.
[3] The United States Trustee, Ilene J. Lashinsky, appeared by attorney Christopher T. Borniger. The debtor Randy L. Robinson appeared in person and by his attorney Mark J. Lazzo. The Subchapter V trustee Rob Messerli also appeared.
[4] 28 U.S.C. §§ 157(b)(1), 1334, and Amended Standing Order of Reference, D. Kan. S.O. 13-1 (June 24, 2013).

2

The Court presented much of the factual background of this case in *Order I*, and it will not be repeated here. Those facts are incorporated by reference. This Order will focus on the facts pertaining to confirmation of debtor's amended plan and the UST's objection that the plan was not proposed in good faith.

Debtor filed his individual Chapter 11 Subchapter V case on December 2, 2020 and remains as the debtor-in-possession managing his funeral home business, Countryside Funeral Home LLC. Robinson derives his monthly income from his Countryside salary. For recreation, debtor frequents a casino in Oklahoma, about an hour away from his home, where he plays slot machines. He has done so for several years up to now. Robinson's bankruptcy filing was prompted by several years' unpaid income taxes, a large portion of which are penalties and interest, and his large personal guaranty of Countryside's loan.

On his initial statement of financial affairs (SOFA), Robinson disclosed on question 4, his 2018 and 2019 income from operating a business as $405,910 and $298,891, respectively.[5] These figures were obtained from his tax returns prepared by his accountant; they represent his adjusted gross income (AGI).[6] AGI includes not only his wages or salary and income from operating Countryside, it also includes other sources of income from Schedule 1—that encompasses Robinson's gambling winnings. The 2018 gambling winnings of $250,234 and 2019 gambling winnings of $185,674 should have been subtracted from AGI and separately disclosed on question 5 (other sources of income) where it is specifically solicited rather than

---

[5] Doc. 1, p. 48.
[6] *See* Ex. 1, p. UST000007, line 6; Ex. 2, p. UST000069, line 8b.

3

including it in question 4 where only income from employment or operation of a business is sought. Debtor's attorney took responsibility for the manner in which the SOFA was completed, stating that he did not segregate the gambling winnings because with the complete offset by gambling losses there was no taxable income attributable to gambling. The Court finds no evidence that debtor was manipulating the responses to questions 4 and 5 in any attempt to hide his prepetition gambling. The debtor also failed to disclose on question 15 of the SOFA, any gambling losses in the year prior to bankruptcy.[7]

When Robinson revealed his postpetition gambling activity in the December operating report filed January 27, 2001, that prompted the UST to make inquiry of debtor on February 16, 2021 regarding the omission of gambling losses on question 15 of SOFA.[8] Debtor said he didn't see the question on anything he signed, but on February 26 advised his attorney that his 2020 tax return would show a $95,930 gambling loss (and winnings). At trial, Robinson said he "missed" the omission, until brought to his attention by the UST. As noted in *Order I,* debtor did not realize that he was prohibited from gambling while in bankruptcy;[9] he now understands the gravity of the situation after having a stern discussion with his attorney.

Debtor's attorney immediately directed his staff to amend the schedules to disclose the gambling loss. Unfortunately, the amended SOFA was not filed until March 30,[10] the same day that the UST filed its objection to confirmation of the

---

[7] Doc. 1, p. 50.
[8] Ex. A.
[9] *Order I,* 628 B.R. 168, 174.
[10] Doc. 58.

4

amended plan.[11] The UST did not question debtor's answers to question 4 or 5 of SOFA. The amended SOFA disclosed the 2020 gambling loss on question 15, but did not disclose the same amount of gambling winnings on question 5 or otherwise amend debtor's answers to questions 4 and 5 to segregate and disclose gambling winnings as an "other source of income" in question 5. Although amending the response to question 15 should have also prompted an amendment to the response to question 5, the Court finds that debtor's explanation for not making his responses to questions 15 and 5 consistent did not exhibit any intent to hide information or behave dishonestly.

The debtor delivered his 2018 and 2019 tax returns to the UST in late December 2020 at the time of the § 341 meeting of creditors. Those returns showed significant gambling activity, but the UST raised no questions at that time.[12] Robinson provided to his accountant W-2G Forms substantiating his gambling winnings for each tax year that were reported on Schedule 1 – other income. The accountant offset those winnings each tax year by deducting Robinson's gambling losses as reported on Schedule A of itemized deductions, line 16 of his federal return.[13] On his 2018 federal tax return, Robinson reported gambling income of $250,234 and the same number on itemized deductions for gambling losses.[14] This

---

[11] Doc. 57.
[12] Ex. 1 and 2.
[13] The casino issues a Form W-2G if the gambler receives $1,200 or more in winnings from slot machines. It is reported as "other income" on Schedule 1 (Form 1040). Gambling losses can be deducted as an itemized deduction, but only to the extent of winnings. *See* https://www.irs.gov/forms-pubs/about-form-w-2-g (last viewed April 14, 2021).
[14] Trial Ex. 1, p. UST000008, line 21, and p. UST000011, line 16.

5

gambling "wash" left Robinson with $133,556 of taxable income in 2018.[15] On his 2019 federal tax return, he reported gambling income and deducted gambling losses, in the amount of $185,674.[16] Robinson reported taxable income of $92,808 for 2019.[17] Though Robinson's 2020 tax return had not been filed and was not introduced at the April trial, he had $95,930 gambling winnings and offset losses in 2020 based on the amended SOFA.

Debtor filed his amended plan on March 1, 2021.[18] He negotiated plan treatment with his creditors and early in the case debtor's counsel advised the Court it would be a consensual plan. All of the classes of claims are impaired. On March 2, debtor mailed to creditors the amended plan, the Court's notice to creditors of the confirmation hearing and pertinent deadlines,[19] and ballots;[20] creditors had until March 31 to object to confirmation and return their ballot accepting or rejecting the amended plan. No creditors filed objections to confirmation or appeared at the confirmation hearing. On April 5, debtor's attorney filed a certificate of voting showing that no creditor in any class voted or returned a ballot.[21]

Class 1 and Class 2 are small secured claims held by Ally Financial for vehicle loans. Robinson's larger debts consist of an unsecured $1.9 million personal guaranty

---

[15] *Id.* at p. UST000007, line 10.
[16] Trial Ex. 2, p. UST000071, line 8, and p. UST000072, line 16.
[17] *Id.* at p. UST000069, line 11b.
[18] Doc. 44. The amended plan included discharge provisions that were previously omitted from the plan. *Id.,* Art. 9, pp. 9-10.
[19] Doc. 45.
[20] Doc. 46.
[21] Doc. 62.

**6**

of business loans to Countryside (Class 7) and federal and state income tax claims

totaling nearly $246,000.[22]

| Class 3 | Internal Revenue Service (secured) | $108,351 |
| Class 4 | Internal Revenue Service (priority) | $ 63,852 |
| Class 5: | Kansas Dept. of Revenue (priority) | $ 45,792 |
| Class 6: | Oklahoma Dept. of Revenue (priority) | $ 28,000 |

Classes 1-6 are single creditor classes. Only Class 7, the general unsecured class had

multiple creditors. No claims were scheduled or filed for gambling debt and there is

no evidence of record that such claims exist.[23]

Debtor proposes to pay Class 7 general unsecured creditors on a pro rata basis

from $500 monthly plan payments over thirty-six months, or a total of $18,000.

Robinson's $1.9 million loan guarantee comprises the lion's share of the general

unsecured claims.[24] The amortized monthly plan payments for the other classes of

claims are as follows:[25]

| Class 1 | $    51.69 |
| Class 2 | $  248.41 |
| Class 3 | $1,054.11 |
| Class 4 | $1,155.97 |
| Class 5 | $  763.20 |
| Class 6 | $  466.67 |
| | $3,740.05 |

---

[22] Debtor will pay the Class 3 IRS secured claim over 10 years. The remaining tax claims (Class 4, 5 and 6) will be paid over 5 years, as will the Class 1 and 2 claims. The IRS has an unsecured claim of $18,704 in Class 7. *See* Claim 7-1. The Kansas Department of Revenue also has an unsecured claim of $8,617 in Class 7. *See* Claim 3-1.

[23] As noted in *Order I,* debtor did not know what a casino marker was. *In re Robinson,* 628 B.R. 168, 173 n. 23.

[24] Debtor scheduled a total of $2,261,092 nonpriority unsecured debt. Doc. 1, p. 45.

[25] *See* Ex. 2-7 attached to Doc. 44, pp. 12-30.

7

Thus, debtor's proposed monthly plan payments for the classified claims under his plan total $4,240.05 ($3,740.05 + $500).

At trial, in response to the UST's gross mismanagement claim premised on debtor's postpetition, preconfirmation gambling loss of $4,000, debtor offered to increase his payment to the general unsecured creditor class to $22,000.[26] That would increase his monthly payment for Class 7 from $500 to $611.11 over thirty-six months. The debtor also pledged to cease gambling while in Chapter 11. The debtor did not memorialize these changes by amending his plan, but indicated those changes would be incorporated into the confirmation order, if the Court confirmed the amended plan. The Subchapter V trustee supported confirmation of the plan, provided debtor increased the Class 7 payment by $4,000 to cover the postpetition gambling loss.

With those changes, debtor's total monthly plan payments for Classes 1-7 would increase about $111, to $4,351.16. Debtor testified that he believed his total monthly payment upon confirmation would approach $6,000. The difference is an allowance for administrative expenses for attorney's fees and expenses (for which debtor's counsel agreed to be paid over time), accountant fees, and Subchapter V trustee fees, as recognized in the amended plan, that are not included in the monthly plan payments for Classes 1-7.

### Analysis

A. Debtor's amended plan is proposed in good faith.

---

[26] Note that in *Order I*, the Court concluded that Robinson did not gamble with estate assets. *See In re Robinson*, 628 B.R. 168, 179.

8

The debtor, as the chapter 11 plan proponent, has the burden of proving by a preponderance of the evidence that his plan satisfies the statutory requirements for confirmation.[27] One such requirement for confirmation of a Chapter 11 plan, including a Subchapter V plan, is that the plan must be proposed in good faith and not by any means forbidden by law.[28] Section 1191(a) applicable in Subchapter V cases, incorporates all of the confirmation requirements of § 1129(a), except (a)(15). It states that "the court *shall* confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met."[29] The Code does not define or describe what constitutes good faith under § 1129(a)(3), but the case law does.

The Tenth Circuit Court of Appeals reaffirmed the test of good faith in *In re Paige,* citing to its *Pikes Peak Water* decision in 1985.[30]

> In [*Pikes Peak Water Co.*], we quoted the bankruptcy court's articulation of the standard:
>
>> The test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions.
>
> *Id.* at 1459. We noted that "[i]n finding a lack of good faith, courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions." *Id.* at 1460. "Not

---

[27] *See In re Paige,* 685 F.3d 1160, 1177 (10th Cir. 2012).

[28] § 1129(a)(3).

[29] § 1191(a). Emphasis added.

[30] 685 F. 3d 1160, 1179 (10th Cir. 2012) (test of good faith is whether a plan is likely to achieve its goals and those goals are consistent with the purposes of the Code). *See Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1459-60 (10th Cir. 1985).

9

confirming the plan for lack of good faith is appropriate particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Id.*[31]

The *Paige* court noted that a plan proponent's actions or relationships may render a plan incapable of achieving goals consistent with the Code, but concluded in that case no conflict of interest was present.[32] Here, the UST's good faith objection is based on debtor's alleged concealment of his gambling activity, pre- and post-petition, insinuating that debtor risks performance of the plan, will divert funds for himself, or is able to pay more to creditors.

The Court previously addressed the debtor's single gambling excursion occurring postpetition that was the basis for the UST's motion to dismiss in *Order I*. Debtor did not conceal his postpetition gambling; he revealed it in detail in the December 2020 operating report and it was that disclosure that led to the UST's motion to dismiss two months later. Thus, the Court will limit its analysis here to debtor's alleged concealment of his prepetition gambling.

The UST presented no evidence that Robinson underreported his gambling winnings or overstated his gambling losses on his tax returns. Nor did the Court hear any evidence that Robinson was secreting gambling winnings that otherwise would be available to pay creditors under his plan. Withdrawals and deposits pertaining to gambling were made through his checking account. He had no safe deposit box, safe, and did not otherwise "store" cash at his home. Though the SOFA

---

[31] *In re Paige,* 685 F. 3d 1160, 1178-79.
[32] *Id.* at 1179.

10

and amended SOFA were not properly completed in questions 4, 5, and 15, the mistakes did not result in the hiding of any taxable income and were not intended to hide debtor's prepetition gambling. Any contention that debtor concealed his gambling is an overreach in these circumstances, especially when considered with the debtor's forthright disclosures in the December operating report, the tax returns, and his ready cooperation regarding all of the UST's questions about his gambling.[33]

Based on the record before it, the Court cannot find that Robinson acted in bad faith. In addition, he has agreed to provide an additional $4,000 to Class 7 to cover the preconfirmation gambling loss and to cease gambling while in bankruptcy. Robinson's intent in filing this case was to address his significant tax liabilities and discharge most of the personal guaranty. The terms of his amended plan does that. He will pay all administrative expenses and allowed priority and secured claims in full. He timely filed his plan. No creditors in any class filed objections to confirmation. The Subchapter V trustee supports confirmation of the amended plan, provided the distribution to Class 7 claims is increased $4,000 to cover the postpetition gambling loss.

Although the trustee expressed concern of a risk of performance of the plan should Robinson revert to gambling, he admitted that the amended plan was feasible, that creditors were better off under the plan, and that debtor deserved a

---

[33] Despite arguing Robinson's lack of good faith, the UST had no objection to Robinson, rather than the trustee, acting as disbursing agent and making payments to creditors under the plan if confirmed as a nonconsensual plan. Section 1194(b) normally requires that a § 1191(b) confirmation result in the trustee becoming the disbursing agent.

11

chance to perform the confirmed plan. The Court therefore concludes that debtor has not abused the purposes of reorganization under the Bankruptcy Code and has not attempted to delay or frustrate the legitimate rights of his creditors. Robinson's plan presents a realistic possibility of an effective reorganization, agreed to by everyone except the UST.

B. Debtor's amended plan can be confirmed as a consensual plan.

At trial, the UST asserted that even if its confirmation objection was unsuccessful, Robinson's amended plan could not be confirmed as a consensual plan. In a subchapter V case, confirmation under § 1191(a) is considered "consensual" if all impaired classes of creditors have accepted it pursuant to § 1129(a)(8). The UST argued that there were no accepting ballots and therefore, the plan failed to satisfy both § 1129(a)(8) and (a)(10).[34] Section 1191(a) states that the court "shall confirm a plan" under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15), are met.

In a chapter 11 subchapter V case, the Code contemplates that creditors will vote to accept or reject a proposed plan. Section 1129(a)(8) provides: "With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such

---

[34] This position taken by the UST at the evidentiary hearing in Robinson's case seems inconsistent with the position the UST took in the companion subchapter V case of *In re Brock,* No. 20-11470 (Bankr. D. Kan.). The Court held a confirmation hearing on both cases on the same day. Both debtors were represented by the same counsel and the debtors' plans were similar. The UST did not object to Brock's plan being confirmed as a consensual plan even though no creditor in ten of the eleven classes returned a ballot. *See* Doc. 49. Only one general unsecured creditor voted to accept the plan, resulting in only one accepting class under the rationale asserted by the UST in this case.

12

class is not impaired under the plan."[35] Where all classes are impaired as here, each class must accept the plan to be confirmed as a consensual plan.[36]

Section 1129(a)(10) codifies the one impaired accepting class requirement for a chapter 11 plan to be confirmed under the cramdown provision, § 1129(b). Section 1129(a)(10) states: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider." Significantly, § 1129(a)(10) must be satisfied in a non-subchapter V chapter 11 case for cramdown confirmation of a plan.[37] Not so in a subchapter V case. Section 1129(b) cramdown does not apply in a nonconsensual subchapter V case.[38] Subchapter V has its own cramdown provision for nonconsensual plans—§ 1191(b), which provides that the court can confirm a plan "if all of the applicable requirements of section 1129(a) of this title, *other than paragraphs (8), (10), and (15) of that section,* are met with respect to a plan . . . .[39] In short, a debtor in a subchapter V case is not required to have at least one impaired accepting class to obtain confirmation of a nonconsensual plan while a non-subchapter V chapter 11 debtor does.[40] With respect to a consensual plan, if all

---

[35] A class that is not impaired is conclusively presumed to have accepted the plan and solicitation of acceptances from such a class is not required. *See* § 1126(f).

[36] *See In re Trenton Ridge,* 461 B.R. 440, 455-56 (Bankr. S.D. Ohio 2011) (noting that chapter 11 plan must be confirmed if the plan is consensual).

[37] Section 1129(b) permits plan confirmation "if all of the applicable requirements of subsection (a) of this section *other than paragraph (8)* are met with respect to a plan . . . ." (Emphasis added).

[38] *See* § 1181(a). *See also, In re Pearl Resources LLC, et al,* No. 20-31585, Doc. 238, at p. 20 (Bankr. S.D. Tex. Sept. 30, 2020) (noting that § 1191(b) replaces the cramdown requirements of § 1129(b), which doesn't apply in a subchapter V case).

[39] Section 1191(b) (Emphasis added).

[40] *See In re Moore Properties of Person County, LLC*, No. 20-80081, 2020 WL 995544, at *5 (Bankr. M.D.N.C. Feb. 28, 2020).

13

impaired classes accept the plan under § 1129(a)(8), § 1129(a)(10)'s requirement of one impaired accepting class is automatically satisfied so long as one of the accepting classes is determined without including any acceptance by an insider.

Section 1126(a) provides that a holder of an allowed claim *may* vote to accept or reject a plan of reorganization. Nothing in the Code requires the holder of an allowed claim to vote. Subsection (c) addresses acceptance of the plan and applies in a subchapter V case.[41] It applies the two-thirds in amount and more than one-half in number of allowed claims criteria for acceptance by a class of claims.

Chapter 11 debtors should be mindful that the IRS has a historical practice of not voting on plans.[42] In Robinson's case, the IRS is the largest secured and largest priority creditor. Nothing in this Court's current review of the Internal Revenue Manual suggests that its policy has recently changed with respect to priority tax claims; for secured and general unsecured claims the IRS recognizes its "opportunity to vote to accept or reject a plan," and that authority is delegated to the Secretary of the Treasury.[43]

Bankruptcy Rule 3018(c) governs the procedure and form for accepting or rejecting a plan. It provides, in relevant part: "An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor . . .

---

[41] Section 1126 is not one of the chapter 11 provisions made inapplicable in Subchapter V cases. *See* § 1181(a) and (b).

[42] *See In re Sabbun,* 556 B.R. 383, 390 (Bankr. C.D. Ill. 2016).

[43] *See* Internal Revenue Manual § 5.17.10.9.3(4) and (5) (01-03-2020), https://www.irs.gov/irm/part5/irm_05-017-010#idm139860310224032 (last viewed July 9, 2021).

14

or an authorized agent, and conform to the appropriate Official Form."[44] An objection to confirmation is distinct from casting a ballot to accept or reject the plan.[45] Thus, an objection to confirmation does not constitute a vote to reject the plan and the lack of an objection to confirmation does not constitute a vote to accept the plan. Rule 3018 suggests that the affirmative act of voting to accept or reject the plan (returning a completed ballot) is required in order for the vote to be counted. So, what is the effect if no creditor in any class casts a ballot as in the instant case?

Pre-SBRA case law holds that the failure to return a ballot cannot be deemed an acceptance of the plan.[46] The bankruptcy court in *Trenton Ridge* recognized exceptions to the general rule. One exception is where the plan includes a provision that impaired classes in which no votes are cast are presumed to accept the plan.[47] Thus, *Trenton Ridge* suggests a debtor may protect its plan from nonvoting creditors, by including language in the plan to the effect that failure to vote will be deemed an

---

[44] Fed. R. Bankr. P. 3018(c). *See* Official Form 314, the form of a ballot for accepting or rejecting a plan. The Official Form 314 provides that a ballot not received by the deadline means the creditor's vote will not count as either an acceptance or rejection of the plan.

[45] Rule 3018 provides for acceptance or rejection of chapter 11 plan within the time fixed by the court. Rule 3020(b) provides for objections to confirmation within the time fixed by the court. Rule 3020(c) provides that where no objection is filed, "the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."

[46] *See Sabbun, supra* (a stipulation entered into with the IRS after the ballot deadline expired in which the IRS would "affirmatively accept" the plan as modified was not a valid ballot and failure to return a ballot could not be deemed acceptance of the plan); *In re Trenton Ridge Investors, LLC,* 461 B.R. 440, 456 (Bankr. S.D. Ohio 2011) (citing the general rule that "a class cannot be deemed to have accepted a plan if no creditor in the class has voted.").

[47] 461 B.R. 440, 456, citing *In re Adelphia Communications Corp.,* 368 B.R. 140, 260 (Bankr. S.D. N.Y. 2007).

15

acceptance of the plan.[48] No such language is included in Robinson's amended plan before the Court.

Unlike most jurisdictions, the Tenth Circuit recognizes "deemed acceptance" of a Chapter 11 plan by nonvoting creditors for purposes of § 1129(a)(8). In *In re Ruti-Sweetwater, Inc.*[49] the Tenth Circuit Court of Appeals held that a nonvoting and nonobjecting judgment lien creditor who was the only member of an impaired subclass was deemed to have accepted debtor's plan of reorganization. The judgment lien creditor was not alone. Twenty of the eighty-three separate classes of secured claims failed to vote in *Sweetwater*. Nor did the judgment lien creditor and other nonvoting classes appear at the confirmation hearings, during which the bankruptcy court ruled the nonvoting creditors were deemed to have accepted the plan. On appeal of the confirmation order, the appellate court rejected the argument that a failure to vote cannot constitute acceptance.

> We hold that the district court correctly affirmed the bankruptcy court's ruling that Heins' inaction constituted an acceptance of the Plan. To hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge to the plan for the first time. Adoption of the Heins' approach would effectively place all reorganization plans at risk in terms of reliance and finality.
>
> . . . We agree with the District Court's finding that creditors are obligated to take an active role in protecting their claims.[50]

---

[48] *See also,* § 1141(a) (binding effect of confirmed plan, whether or not the creditor has accepted the plan).

[49] *Heins v. Ruti-Sweetwater Inc. (In re Ruti-Sweetwater), 836 F.2d 1263, 1267-68 (10th Cir. 1988).*

[50] *Id.* at 1266-67.

**16**

*Sweetwater's* legal proposition that a nonobjecting and nonvoting creditor is deemed to have accepted debtor's plan of reorganization appears to remain the law in the Tenth Circuit and is binding precedent on this Court, at least for purposes of § 1129(a)(8) and avoiding cramdown confirmation under § 1129(b)(1).[51] That meant, in *Sweetwater,* that debtor's plan could be confirmed without showing the plan did not discriminate unfairly or that the plan was fair and equitable as to impaired, nonvoting classes.[52] *Sweetwater* recognized, as other courts have held, that "actual acceptance" of a plan by at least one class of impaired claims under § 1129(a)(10) is necessary for confirmation of a plan.[53] That is a requirement for confirmation of a nonconsensual plan in a non-subchapter V chapter 11 case. In other words, in a non-subchapter V chapter 11 case, deemed acceptance by an impaired, non-voting class cannot be used to satisfy § 1129(a)(10) in order to pursue cramdown confirmation under § 1129(b).

---

[51] *Id.* at 1268. *See In re Akbari-Shahmirzadi,* No. CIV 14-0982 JB/WPL, 2015 WL 8329208, at *8 (D. N.M. Nov. 25, 2015) (noting distinction of nonvoting members in § 1129(a)(8) versus (a)(10)), *adopting magistrate judge's proposed findings and recommended disposition* 2015 WL 13650076 (D. N.M. June 30 2015); *In re Sunnyland Farms, Inc.,* No. 14-10231-t11, 2015 WL 1598105, at *5 (Bankr. D. N.M. Apr. 8, 2015);

[52] 836 F.2d 1263, 1265. *See* § 1129(b)(1).

[53] *Id.* at 1267, citing *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir. 1987) (only actual acceptance of plan, not stipulations to agree to accept plan, meets requirement of § 1129(a)(10) for cram down). *See also, SLC, Inc. v. Nollkamper,* 868 F.2d 1273 (9th Cir. 1989) (declining to extend "deemed acceptance" to nonvoting creditors for purposes of § 1129(a)(10)); *Sabbun,* 556 B.R. 383, 388 (failure to return a ballot is not deemed to be acceptance); *First State Operating Co. v. Holbrook, et al (In re Lotspeich),* 328 B.R. 209, 219 (10th Cir. BAP 2005) (cramdown requires at least one class of impaired creditors that has affirmatively accepted the plan).

17

How does *Sweetwater* translate to subchapter V? One bankruptcy court in the Tenth Circuit has applied *Sweetwater* in a subchapter V case.[54] As noted previously, in a subchapter V case § 1129(a)(10)'s one impaired accepting class requirement is not required to confirm a nonconsensual plan by cramdown, and cramdown confirmation is not governed by § 1129(b), but § 1191(b). Arguably, the distinction between whether a creditor's acceptance is being determined under § 1129(a)(8) or (a)(10) is blurred in subchapter V. Yet, both § 1129(a)(8) and (a)(10) must be satisfied for a consensual plan under the language of § 1191(a).[55] Section 1129(a)(10) would appear to be superfluous if all impaired classes accept a plan under (a)(8), as long as at least one of the accepting classes was determined without including acceptance by an insider. If not all classes accept the plan it cannot be confirmed as a consensual plan and § 1129(a)(10) is wholly irrelevant to cramdown confirmation under § 1191(b), because no impaired accepting class is required in subchapter V. In short, compliance with § 1129(a)(8) ultimately determines in this case whether the plan can be confirmed as a consensual plan.

Adhering to *Sweetwater's* binding precedent that a nonobjecting and nonvoting creditor is deemed to have accepted a chapter 11 plan under § 1129(a)(8), I conclude that all of Robinson's creditors and all classes of creditors in this

---

[54] *See In re Desert Lake Group, LLC,* No. 20-22496, Doc. 114 (Bankr. D. Utah Sept. 30, 2020) (Unpublished) (concluding that all impaired classes of claims and interests had accepted the debtor's plan—either by affirmatively voting to accept the plan or were deemed to have accepted the plan, by not objecting to confirmation and not returning a ballot).

[55] Nothing in § 1191(a) suggests that acceptance of a plan should be determined differently in § 1129(a)(8) versus § 1129(a)(10), other than accepting classes under (a)(10) may not include acceptance by any insider.

18

subchapter V case, none of whom voted, objected to confirmation, or appeared at the confirmation hearing, have accepted the amended plan. Therefore, all impaired classes have accepted the plan under § 1129(a)(8) and the amended plan can and must be confirmed as a consensual plan under § 1191(a), if all other confirmation requirements are satisfied. The Court views its application of "deemed acceptance" wholly consistent with *Sweetwater*. It permits "deemed acceptance" to be used under § 1129(a)(8) to *avoid* cramdown confirmation. As stated in *Sweetwater*:

> If a class of creditors does not accept the plan, and if that class is impaired under the plan . . . the Bankruptcy court may confirm the plan only if it "does not discriminate unfairly, and is fair and equitable, *with respect to each class of claims or interests that is impaired under, and has not accepted the plan.*" 11 U.S.C. § 1129(b). However, if a class of creditors accepts the plan under § 1129(a)(8), the bankruptcy court may confirm the plan without showing that the plan satisfies the "unfair discrimination" and "fair and equitable" standards" under § 1129(b) [with respect to each accepting, impaired class].[56]

In short, "[o]nce acceptance was properly presumed, the court was not obligated to inquire as to whether the Plan discriminated unfairly or was not fair and equitable to the Heins under § 1129(b)(1)."[57] By applying *Sweetwater* here, and satisfying § 1129(a)(8), all impaired classes have accepted the plan, thereby avoiding confirmation as a nonconsensual plan under § 1191(b).

The Court notes that classes 1-6 are all impaired classes comprised of a single creditor. Only the general unsecured class consists of multiple creditors; even that class is dominated by Robinson's tax creditors and his funeral

---

[56] 836 F.2d 1263, 1265 (Emphasis added.) (quoting the District Court's order affirming the bankruptcy court).
[57] *Id.* at 1268.

business's primary secured lender. Robinson's plan is not a case of apathy on the part of nonvoting creditors, but is the product of negotiated treatment to reach a consensual plan and promptly and effectively reorganize.[58] Ideally, it may have been preferable to also include conspicuous language in the plan providing that a failure to vote to accept or reject the plan will be "deemed acceptance," and that the confirmed plan will be binding on the creditors,[59] particularly given the presence of substantial tax claims. However, the lack of this language in Robinson's plan is not fatal to debtor's position.

The Court's conclusion that the nonobjecting and nonvoting creditors are deemed to have unanimously accepted Robinson's amended plan is buttressed by the policy behind subchapter V. It streamlines the reorganization process and is "designed to facilitate the efficient and economical administration of the case and the prompt confirmation of a plan."[60] Robinson's situation is precisely the type of small business case subchapter V was intended to address.

Having concluded that Robinson's amended plan is proposed in good faith and not by any means forbidden by law under § 1129(a)(3) and that all impaired classes have accepted the plan under § 1129(a)(8), Robinson's plan can be confirmed as a consensual plan under § 1191(a) if the plan as modified meets the other requirements in § 1129(a) applicable for confirmation enumerated below. Section 1191(a) expressly excludes compliance with § 1129(a)(15) for confirming a consensual

---

[58] *See* Stephen W. Sather and Barbara M. Barron, Voting and the Apathetic Creditor, 39 AM. BANKR. INST. J. 12 (Dec. 2020).

[59] *See* § 1141(a).

[60] *Pearl Resources, supra* at Doc. 238, p. 5.

plan. The remaining requirements, other than the good faith requirement of §
1129(a)(3), discussed above, will now be addressed.

**Section 1129(a)(1)**

Under this section, the plan must comply with the applicable provisions of
Title 11, including § 1122 regarding classification of claims.[61] Debtor's plan consists
of seven classes. All are impaired. Classes 1-6 each consist of a single creditor and
claim. Class 7 consists of unsecured creditors and properly classifies similar claims
in this class together. The plan complies with § 1122 and § 1129(a)(1).

**Section 1129(a)(2)**

This section  requires the plan proponent to comply with the applicable
provisions of Title 11. The contents of Robinson's amended plan complies with §
1190, including a brief history, liquidation analysis, and projections demonstrating
his ability to make payments. A disclosure statement is not required by subchapter
V and the Court did not order otherwise.[62] Debtor timely filed his plan under §
1189(b). He properly served and noticed his plan for confirmation hearing, solicited
acceptances of the plan by sending ballots to the creditors, and set appropriate
deadlines to oppose confirmation and return ballots, all as reflected in the docket
report for the case. Debtor has filed monthly operating reports required by § 1187(b).
Debtor has complied with § 1129(a)(2).

**Section 1129(a)(4)**

---

[61] Note that § 1121 does not apply in subchapter V, as only the debtor may file a plan. *See* §
1181(a) and § 1189(a).
[62] *See* § 1181(b) and § 1187(c).

21

Debtor's plan discloses proposed payment of court-approved fees and expenses of his counsel, whose employment has been approved and who has filed and noticed periodic fee applications; accountants whose employment has been approved by the court; and the subchapter V trustee. Debtor's plan complies with this section.

### Section 1129(a)(5)

Debtor is an individual without directors, officers, or voting trustees. This section is inapplicable in Robinson's case.

### Section 1129(a)(6)

Debtor is an individual who is not subject to a governmental regulatory commission over rates of the debtor. This section is inapplicable.

### Section 1129(a)(7)

This section requires debtor's plan to meet the best interests of creditors test. Here, all impaired classes of creditors are deemed to have accepted the plan. Debtor's plan also satisfies the hypothetical chapter 7 liquidation test based on the liquidation analysis attached to the plan. The subchapter V trustee indicated that the amended plan pays more than required by the liquidation test. Class 7 claims would receive no distribution in a hypothetical chapter 7 case.

### Section 1129(a)(9)

This section addresses plan treatment to be provided to certain claims under § 507(a), *except to the extent that the holder of a particular claim has agreed to a different treatment.* Robinson's plan separately classifies secured and priority unsecured tax claims of the IRS (Classes 3 and 4) and priority unsecured tax claims

22

of state taxing authorities (Classes 5 and 6). No party in interest objected to the plan and all creditors accepted the plan. Debtor's plan satisfies this section.

**Section 1129(a)(10)**

This section requires at least one impaired accepting class, determined without including any acceptance of the plan by an insider. None of the creditors comprising Classes 1-6 are insiders. Acceptance of the plan by all creditors in impaired Classes 1-6 therefore was determined without including the vote of any insider and satisfies this section.

**Section 1129(a)(11)**

This section requires the plan to be feasible. The Court finds that debtor will be able to implement his amended plan and make plan payments to his creditors from his salary. Confirmation of Robinson's amended plan is not likely to be followed by liquidation or further reorganization. The subchapter V trustee testified the amended plan was feasible.

**Section 1129(a)(12)**

Subchapter V cases are excepted from the requirement to pay quarterly fees to the United States Trustee under 28 U.S.C. § 1930(a)(6)(A).

**Section 1129(a)(13)**

Debtor is not obligated to provide and does not pay retiree benefits. This section is inapplicable in Robinson's case.

**Section 1129(a)(14)**

Debtor has no domestic support obligation. This section is inapplicable.

23

**Section 1129(a)(16)**

This section limits the permissible transfers by a nonprofit corporation or trust.[63] Debtor's plan has no transfers within the meaning of this section. This section is inapplicable.

Having satisfied all the applicable confirmation requirements for confirmation as a consensual plan, § 1191(a) requires the Court to confirm Robinson's amended plan.

Conclusion

The UST's objection to confirmation for lack of good faith under § 1129(a)(3) is OVERRULED.

The debtor's amended plan is CONFIRMED AS MODIFIED as a consensual plan under § 1191(a).

The trustee's services are terminated upon substantial consummation of the confirmed plan.[64]

Upon confirmation of debtor's amended plan, the debtor is discharged from any debt that arose before the date of confirmation, and any debt specified in §§

---

[63] Alan N. Resnick & Henry J. Sommer, Editors in Chief, 7 COLLIER ON BANKRUPTCY, ¶ 1129.02[16] (16th ed. 2021).
[64] *See* § 1101(2) (defining substantial consummation) and § 1183(c) (terminating trustee's service).

24

502(g), (h) and (i), unless otherwise provided in the amended plan,[65] or the order confirming the amended plan.[66]

Counsel for the debtor shall prepare and submit a proposed confirmation order for the Court's approval. The confirmation order shall include: (1) a modification to Class 7 by increasing the distribution to general unsecured creditors from $18,000 to $22,000 as agreed to by debtor; (2) a general provision prohibiting debtor from engaging in any form of gambling until completion of all payments under the plan; and (3) a modification to Article 8, Miscellaneous Provisions, providing that modification of the plan shall be governed by § 1193 applicable in subchapter V cases, not § 1127.[67]

# # #

---

[65] Debtor's amended plan provides that any debt owed to the IRS shall not be discharged until the federal taxes provided for in the amended plan have been paid in full. *See* Doc. 44, p. 6.

[66] Section 1141(d)(1)(A). Note that § 1141(d)(5) applicable to individual debtors, does not apply in subchapter V cases. *See* § 1181(a).

[67] Section 1127 does not apply in subchapter V cases. *See* § 1181(a).

25